UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PN II, INC. dba PULTE HOMES and/or DEL WEBB, a Nevada corporation | Case No. 2:20-cv-01383-ART-BNW |
| Plaintiff, | Order |
| v. | |
| NATIONAL FIRE & MARINE INSURANC COMPANY; and DOES 1 through 100, inclusive, | |
| Defendants. | |

Plaintiff Pulte Homes ("Pulte"), standing in the shoes of insured Executive Plastering, Inc. ("EP") following an assignment of rights, brings this case against Defendant National Fire, one of EP's insurers, for alleged statutory violations, contractual breaches, and tortious conduct in relation to its actions in a state case between Pulte and EP ("Eave Soffits Lawsuit").

Before the Court are Plaintiff's Motion for Partial Summary Judgment (ECF No. 94), Third Party Defendant's Motion for Partial Summary Judgment (ECF No. 97), Defendant's Motions for Summary Judgment (ECF Nos. 100, 102), and Defendant's Motions to Seal Documents (ECF Nos. 104, 116.)

## I.  BACKGROUND

Pulte, a homebuilder, subcontracted with EP to perform work on some of its homes in the Las Vegas area, including the installation of expanded polystyrene foam eave soffits. (ECF No. 94-4 at ¶¶ 1-2, 10.) Their agreement included a provision that required EP to protect and indemnify Pulte "against all liability, claims, judgments, suits or demands for damages to persons or property arising out of, resulting from, or relating to" its work under the agreement unless the

trier of fact found Pulte solely liable for the damage. (*Id.* at ¶ 3.) The agreement also stated that If Pulte brought or defended any legal action in connection with EP's work, EP would pay all costs and expenses. (*Id.* at ¶ 8.) At some point after the installation of the soffits, homeowners complained that portions of the eave soffits showed signs of damage, including cracking, separating, and sagging, which had caused cracked paint. (*Id.* at ¶¶ 12-13.) Pulte informed EP of these claims and asked EP to perform repairs. (*Id.* at ¶ 15.) EP attempted to make repairs but stopped after the repairs failed to meet Pulte's expectations. (*Id.* at ¶ 16.) Pulte's consultant, Brad Oberg, concluded that the soffits were improperly installed, and Pulte hired third party contractors to repair the eave soffits. (*Id.* at ¶¶ 17-18.) Pulte alleges that these repairs at 2,033 homes cost $18,459,875.21 while EP alleges that Pulte only provided documentation for $13,686,194.34 in repairs. (*Id.* at ¶ 19.)

Multiple insurers provided liability insurance policies on behalf of EP. National Fire issued policies to EP between December 31, 2002-December 31, 2005. (ECF Nos. 94-1, 94-2, 94-3.) The National Fire policies provided coverage for property damage caused by an "occurrence" during the policy period. (ECF Nos. 1 at 32; 2 at 29; 3 at 29.) The policies specified that "[b]ankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this coverage part." (ECF Nos. 94-1 at 41; 94-2 at 38; 94-3 at 38.) Contractors Insurance Company of North America ("CICNA") also insured EP beginning April 1, 2004. (ECF No. 102-7.) These policies do not include a prior work exclusion or a prior damages exclusion. (*Id.*; ECF No. 102-8.) EP was further insured by First Specialty Insurance Company ("FSIC"). (ECF No. 97-25 at 3.)

On December 21, 2009, EP filed a Chapter 7 liquidation proceeding in the Bankruptcy Court for the District of Nevada. (ECF No. 95-1 at 1-3.)  On April 22, 2015, Pulte filed a motion to lift the bankruptcy stay (ECF No. 101-3 at 2.) Pulte specified that it had "no intentions of seeking recovery against the Debtor or the

bankruptcy estate." (*Id.*) On June 1, 2015, the bankruptcy Court granted Pulte's motion for relief from the automatic bankruptcy stay "for the limited purpose of liquidating its claims against [EP] and pursuing the recovery of any available insurance proceeds from the Debtor's liability insurers[.]" (ECF No. 95-2 at 2.) On June 18, 2015, Pulte filed a complaint against EP in the Eighth Judicial District Court, Clark County (Case No. A-15-720186) to recover the costs of the repairs. (ECF Nos. 94-6 at ¶ 2; 94-7.) Pulte's complaint asserted claims against EP for contractual indemnity, equitable or implied indemnity, breach of contract, breach of express warranty, breach of implied warranty, and declaratory relief. (ECF No. 101-6 at 6-11.) Pulte's complaint did not refer to any insurance policies nor allege when the property damage occurred. (ECF No. 94-7.) On June 28, 2016, EP's bankruptcy case was closed. (ECF No. 95-3 at 2.) EP's corporate status is "permanently revoked." (ECF No. 95-6 at 2.)

Pulte then reached out to counsel about the case. On July 1, 2015, Pulte's counsel sent the complaint to National Fire and FSIC and offered to settle the Eave Soffits Lawsuit for their remaining policy limits. (ECF Nos. 94-6 at ¶ 3; 94-8 at 2-3.) On July 17, 2015, National Fire responded to Pulte that its policy did not insure EP for the loss and informed Pulte that it would not provide a defense nor indemnify EP. (ECF No. 94-18 at 2.) National Fire argued that the complaint did not allege "property damage" caused by an "occurrence" during the policy period and thus its policy did not apply. (*Id.* at 4.) National Fire further asserted that its policy did not apply because the contract between Pulte and EP was not an "insured contract." (*Id.*) National Fire did not participate in EP's defense during the Eave Soffits Lawsuit. (ECF No. 9 at ¶ 22.) On October 12, 2015, Pulte informed National Fire that EP was in default and argued that National Fire's policy applied. (ECF Nos. 94-6 at ¶ 5; 94-10 at 2-5.)

EP's other insurers defended it in the Eave Soffits Lawsuit and eventually reached an agreement with Pulte. Both CICNA and FSIC retained counsel. (ECF

No. 94-6 at ¶ 6.) In November 2015, defense counsel appointed by FSIC provided a letter intended to tender EP's defense to National Fire. (ECF Nos. 100-15 at 18:25-19:09; 113-1 at 3-5; 113-2 at 95:8-97:1; 113-3 at 23:03-24:12.) Defense counsel was acting on behalf of EP since it was bankrupt and no longer an entity at this point. (ECF No. 100-14 at 16:05-16:14.) Initially National Fire reached out to counsel retained by FSIC for EP to also hire them to defend EP. (ECF No. 113-4 at 2.) On June 13, 2017, Pulte sent offers to National Fire, CICNA, and FSIC to settle the Eave Soffits Lawsuit by paying their respective policy limits. (ECF No. 94-6 at ¶ 7; ECF No. 94-11 at 2-3.) During a mediation on August 7, 2017, Pulte offered to settle with National Fire for $250,000, which National Fire rejected. (ECF No. 94-12 at 2.) In October 2019, Pulte reached an agreement in principle with CICNA and FSIC to resolve the lawsuit. CICNA and FSIC agreed to collectively pay $3,559,745; in return, the court would enter a judgment against EP, Pulte would enter a covenant not to execute the judgment against EP, and EP would assign its rights against National Fire to Pulte. (ECF Nos. 94-6 at ¶ 9; 94-13 at 5-6.) On October 10, 2019, Pulte notified National Fire of the agreement and provided National Fire with an opportunity to settle for its policy limits to avoid a judgment against EP, but National Fire rejected the offer. (EC Nos. 94-6 at ¶ 10; 94-14 at 2-3.) On October 16, 2019, National Fire's counsel emailed CICNA's counsel and asserted that the settlement process constituted bad faith. (ECF No. 94-19 at 2-6.)

Afterwards, Pulte and EP jointly petitioned the court in the Eave Soffits Lawsuit to appoint a receiver to represent EP's interests. (ECF No. 95-4 at 2-4.) On November 18, 2019, the court appointed The Honorable Michael A. Cherry (Ret.) ("Justice Cherry") to act as EP's receiver. (ECF No. 95-5 at 2-3.) National Fire contacted Justice Cherry to alert him to its concerns that Pulte was setting it up and to request that he 1) not find that the other insurance carriers acted in good faith; 2) not find that National Fire's policies made it liable in the Eave Soffits

Lawsuit; 3) not find that National Fire acted in bad faith; and 4) not release CICNA in a way that would impact National Fire's ability to later recover from CICNA. (ECF No. 94-20 at 9-10.) On December 19, 2019, the state court held a bench trial;[1] while National Fire did not provide EP with a defense, its counsel observed the bench trial. (ECF No. 94-6 at ¶¶ 12-13.) On May 12, 2020, Justice Cherry signed a covenant not to execute and assignment of claims between Pulte and EP. (ECF No. 101-12 at 231.) On May 29, 2020, the Court entered Judgment in favor of Pulte for $13,000,000, in addition to costs and interest. (ECF No. 94-4 at 8-9.) That same day, National Fire informed Pulte that it intended to make an unconditional payment of $267,685.21 in "partial satisfaction" of the judgment. (ECF No. 94-15 at 4.)

Following the resolution of the Eave Soffits Lawsuit, Pulte initiated the present action. Pulte filed its complaint on July 24, 2020. (ECF No. 1.) Pulte, as an assignee of EP's rights, brings the following causes of action against National Fire: 1) breach of contract-duty to defend; 2) breach of contract- duty to indemnify; 3) tortious breach of the duty of good faith and fair dealing; and 4) violation of Nevada's Unfair Claims Settlement Practices Act. (*Id.* at 6-9.)

In response, National Fire filed a Third-Party Complaint against CICNA seeking declaratory relief that the assignment of EP's rights against National Fire to EP were without force and effect, the CICNA policies were primary and noncontributory while National Fire policies did not apply or were excess, and some or all of the $267,685.21 National Fire paid to Pulte should be reimbursed to National Fire by CICNA. (ECF No. 9 at 36-39.) National Fire also brought a cause of action seeking contribution or reimbursement of any amount the court finds that it owes Pulte. (*Id.* at 39-40.) National Fire justifies these causes of action with evidence that Pulte and CICNA, who are owned by the same parent

---

[1] Plaintiff's counsel states that the trial happened on December 19, 2020, but this appears to be a typo.

company, did not operate at arm's length and tried to inflate the damages to increase its potential award in a lawsuit against National Fire. (ECF Nos. 115-2 at 3-4, 115-32 at 4, 115-39 at 133:13-134:22, 136:06-137:07.)

## II.    LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party satisfies Rule 56's requirements, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists[.]" *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

///

///

### III.   DISCUSSION

a. Assignment of EP's rights

i. Standing to Challenge

Defendant National Fire challenges the assignment of EP's rights to Plaintiff Pulte, and thus its ability to bring this lawsuit. However, the Court finds that National Fire does not have standing to challenge the assignment.

Defendant attempts to characterize Plaintiff as violating a bankruptcy court order as opposed to a bankruptcy court's automatic stay, but this distinction is unimportant since the bankruptcy court's order simply modified the automatic stay and Defendant fails to provide any evidence for treating these situations as distinct. National Fire cannot challenge the assignment because only the debtor or trustee may challenge alleged violations of a bankruptcy court's automatic stay. *See In re Demas Wai Yan*, 703 Fed.Appx. 582, 583 (Mem.) (9th Cir. 2017) (citing *Tilley v. Vucurevich* (*In re Pecan Groves of Ariz.*), 951 F.2d 242, 245 (9th Cir. 1991); *Magnoni v. Globe Inv. & Loan Co.* (*In re Globe Inv. & Loan Co.*), 867 F.2d 556, 560 (9th Cir. 1989)). In *In re Globe Inv.*, the Ninth Circuit cited to language from bankruptcy court cases in the Northern District of California and the Northern District of Texas (*In re Stivers*, 31 B.R. 735 (Bankr. N.D. Cal 1983) and *In re Fuel Oil Supply and Terminaling, Inc.*, 30 B.R. 360, 362 (Bankr. N.D. Tex. 1983)) that stated automatic stays exist specifically for the debtor's benefit. Thus, the Ninth Circuit recognizes that other parties cannot use any potential violations of the stay for their benefit, and that outside parties cannot challenge the bankruptcy court's automatic stay. 867 F.2d at 560. Since National Fire is not the debtor or trustee, it lacks standing to challenge EP's assignment of its rights to Plaintiff.

ii. Validity of Assignment

Even assuming National Fire has standing, the assignment was valid. Defendant makes two arguments for why the assignment was invalid: 1) the

insurance policies were estate assets and thus EP had no right to assign them to Plaintiff; and 2) only the Bankruptcy Court can adjudicate the claims at issue in this case.

EP validly assigned its rights to Plaintiff. The filing of a bankruptcy case creates an estate consisting of "all legal or equitable interests of the debtor in property *as of the commencement of the case.*" 11 U.S.C. § 541(a) (emphasis added). This includes "causes of action that have accrued before that commencement." *In re Glaser*, 816 Fed.Appx. 103, 104 (9th Cir. 2020). Whether a cause of action exists "pre-petition" or arises only "post-petition" depends on when the cause of action "could have been brought" under state law. *Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir. 2001) (citing *In re Folks*, 211 B.R. 378, 384 (B.A.P. 9th Cir. 1997), *abrogated on other grounds by Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1252 (9th Cir. 2010)); *Regatta Bay Ltd. v. United States*, No. 2:07-CV-01619-PMP-PAL, 2008 WL 11301177 at *9 (D. Nev. Dec. 5, 2008), aff'd, 506 F. App'x 617 (9th Cir. 2013) ("To determine when an action accrues, the Court looks to state law. In Nevada, generally a cause of action accrues when the wrong occurs and a party sustains injuries for which relief could be sought.").

All of Pulte's causes of actions accrued after the close of the bankruptcy case and thus are not part of the bankruptcy estate. "Under Nevada law, 'the plaintiff in a breach of contract action [must] show (1) the existence of a valid contract, (2) a breach by the defendant, and 3) damages as a result of the breach.'" *Rivera v. Peri & Sons Farm, Inc.*, 735 F.3d 892, 899 (9th Cir. 2013) (citing *Saini v. Int'l Game Tech.*, 434 F.Supp. 2d 913, 919-20 (D. Nev. 2006). Damages for breach of the duty to defend include the policy, attorney's fees and costs, and "[d]amages that may naturally flow from an insurer's breach". *See Century Sur. Co. v. Andrew*, 432 P.3d 180, 185-86 (Nev. 2018) (quoting *Newhouse v. Citizens Sec. Mut. Ins. Co.*, 501 N.W. 2d 1, 6 (Wis. 1993)) (adopting the minority rule that damages for breach of the duty to defend go beyond the limits of the policy plus

attorneys' fees and costs, and also includes "[d]amages that may naturally flow from an insurer's breach").

EP's breach of contract-based causes of action for failure to defend and failure to indemnify did not accrue until every element had occurred, including damages. National Fire first refused to defend EP in July 2015 and maintained this position throughout the duration of the Eave Soffits Lawsuit, which concluded in May 2020. (ECF Nos. 9 at ¶ 22; 94-18 at 2.) EP was damaged by National Fire's breach only when the Judgment was entered in May 2020. EP's bankruptcy case, which was filed on December 21, 2009, had concluded on June 28, 2016. (ECF No. 101-2 at 2.) Because EP's breach of contract claims did not accrue until years after the bankruptcy case was over, they were not part of the bankruptcy estate. EP also could not have brought the breach of the duty of good faith and fair dealing cause of action until the state court entered the judgment on May 29, 2020, because the alleged tortious breach is factually tied to the alleged failures to defend and settle, and thus EP was not damaged until it faced legal liability against Pulte. (ECF No. 1 at 7-8.)  Lastly, the Unfair Claims Settlement Practices Act cause of action could not have accrued pre-petition because the alleged statutory violations are similarly based on National Fire's conduct during the Eaves Soffits Lawsuit, and EP was not damaged by the conduct until it faced a judgment against it. (*Id.* at 8-9.)

Defendant's arguments to the contrary are unconvincing. Defendant asserts, relying on *In re McCowan*, 296 B.R. 1, 4 (B.A.P. 9th Cir. 2011), that the Bankruptcy Order allowing Pulte relief from the court's automatic stay "for the limited purpose of liquidating its claims against the Debtor and pursuing the recovery of any available insurance proceeds from the Debtor's liability insurers" (ECF No. 101-4 at 2) remained valid and binding even after the bankruptcy case closed. (ECF No. 122 at 9.) However, that case concerned whether the bankruptcy court could still enforce its monetary judgment and the appeals court ruled that

the bankruptcy court maintained jurisdiction because "a proceeding to enforce the resulting judgment or execute on it continues to be a matter that 'arises under' the Bankruptcy Code, until the judgment is satisfied." 296 B.R. at 4.

Defendant further argues that bankruptcy courts maintain jurisdiction to enforce "core proceedings" including motions to modify an automatic stay (ECF No. 122 at 9 n.1). This argument ignores the fact that EP's Receiver assigned EP's rights to Pulte in May 2020, long after the close of the bankruptcy case (and thus many years after the automatic stay was relevant). (ECF No. 101-12 at 230.) Because the causes of action were not property of the bankruptcy estate, the automatic stay was only in effect until the earliest of the following: when the case was closed, dismissed, or at "the time a discharge [was] granted or denied." 11 U.S.C. § 362(c)(2)(A)-(C). Thus, the bankruptcy court had nothing to enforce by the time EP's Receiver assigned EP's rights to Pulte.

### b.  Existence of Duty to Defend

Pulte and National Fire both move for summary judgment on the breach of the duty to defend claim. National Fire argues that it had no duty to defend because 1) EP never tendered its defense to National Fire; 2) Pulte's claims in the Eave Soffits Lawsuit were excluded by National Fire's policy; and 3) National Fire was an excess insurer. Finding that National Fire had a duty to defend, the Court will deny National Fire's Motion for Summary Judgment and grant Pulte's Motion for Summary Judgment on this issue.

### i.  Tendering of Defense

National Fire argues that it had no duty to defend EP because EP never directly tendered its defense to National Fire. However, EP's tender through its counsel was sufficient to trigger National Fire's duty to defend. EP's counsel was acting on EP's behalf when it reached out to National Fire to tender a defense (ECF Nos. 100-15 at 18:25-19:09; 113-1 at 3-5; 113-2 at 95:8-97:1; 113-3 at 23:03-24:12.) While EP's counsel admitted that it never talked to EP because EP no longer

existed (ECF No. 100-14 at 83:15-18), no authority suggests that counsel could not tender on its client's behalf when the entity ceased to exist. National Fire implies that the Receiver or the Chapter 7 Trustee should have tendered a defense to National Fire on EP's behalf (ECF No. 122 at 14), but it fails to cite to any supporting authority for such a proposition.

National Fire asks this Court to impose an overly stringent interpretation of tendering a defense which would prevent entities acting on the insured's behalf from tendering a defense. National Fire cites to *Larkin v. ITT Hartford*, 1999 WL 459351, at *8 (N.D. Cal. June 29, 1999), *aff'd sub nom*, 34 F.App'x 579 (9th Cir. 2002), in which the district court reiterated that "the duty to defend arises upon the insured's tender of a claim" and held that "the insurer's learning of a claim against the insured even though the insured never attempted to tender the claim" was insufficient to trigger the duty to defend because "[s]uch a holding would place the burden on the insurer to inquire if the insured wants a defense anytime the insurer learns of a possible claim against the insured." (ECF No. 122 at 14.) Finding tender sufficient in the present case would not impose such a burden on insurers. Here, EP's other insurers, CICNA and FSIC, had already begun representing EP, and FSIC's counsel reached out to National Fire to request it also participate in the defense (ECF No. 100-14 at 15:08-13, 22:20-24:12.) Thus, this is not a situation where the insurer would be unsure whether the insured wanted the insurer to provide a defense.

The facts of this case further support finding the tender sufficient. In the present case, after receiving a tender from EP's counsel, National Fire initially agreed to defend EP. (ECF No. 113-4 at 2.) While National Fire later reversed this decision, the fact that National Fire responded to the tender supports the Court's finding that the tender was sufficient.

ii.  Contractual Liability Exclusion

National Fire argues that it had no duty to defend EP in the Eave Soffits

Lawsuit because Pulte's claims were excluded by National Fire's policy. That policy included a Contractual Liability Exclusion which exempts coverage for "bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." (ECF No. 100-2 at 33.) National Fire asserts that this exclusion applied to Pulte's claims in the Eave Soffits Lawsuit because EP's liability came from its contract with Pulte. (ECF No. 100 at 24-25.) Pulte argues that the Contractual Liability Exclusion does not apply because the exclusion was intended to exempt coverage when EP assumed some third party's liability, not when a party tried to hold EP accountable for its own liability arising out of its own breach of a contractual duty. (ECF No. 113 at 14-16.)

The Contractual Liability Exclusion did not apply to Pulte's claims. Under Nevada law, "[i]f neither the allegations of the complaint nor facts known to the insurer show any possibility of coverage, then there is no duty to defend. *Nautilus Ins. Co. v. Access Med., LLC*, 482 P.3d 683, 688 (Nev. 2021). Any ambiguities in an insurance contract must be construed in favor of the insured. *Fourth St. Place v. Travelers Indem. Co.*, 270 P.3d 1235, 1239 (Nev. 2011); *Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 621 (Nev. 2011). "A provision in an insurance policy is ambiguous 'if it is reasonably susceptible to more than one interpretation." *Benchmark*, 254 P.3d at 621 (citing *Margrave v. Dermody Properties*, 878 P.2d 291, 293 (Nev. 1994)). Furthermore, "clauses excluding coverage are interpreted narrowly against the insurer." *Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014) (citing *Nat'l Union Fire Ins. Co. of the State of Pa., Inc. v. Reno's Exec. Air, Inc.*, 682 P.2d 1380, 1383 (Nev. 1984)). "To preclude coverage under an insurance policy's exclusion provision, an insurer must (1) draft the exclusion in 'obvious and unambiguous language,' (2) demonstrate that the interpretation excluding coverage is the only reasonable interpretation of the exclusionary provision, and (3) establish that the exclusion plainly applies to the particular

1    case before the court." *Id.* (citing *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668,

2    674 (Nev. 2011)).

3    To exclude coverage, National Fire needed to show that the provision was

4    unambiguous and that its interpretation was the only reasonable interpretation.

5    It has failed to meet this burden because the provision is arguably ambiguous.

6    *See Big-D Const. Corp. v. Take it for Granite Too*, 917 F.Supp.2d 1096, 1117 n.3

7    (D. Nev. 2013) (finding similar contractual language ambiguous and construing

8    the provision in favor of the insured to only apply to the assumption of a third

9    party's liability). One could reasonably find that the provision was intended to

10   only exclude coverage when the insured assumed the liability of a third-party and

11   thus would not exclude coverage for damages arising from EP's own contractual

12   liability. Since National Fire had the opportunity to draft an unambiguous version

13   of the provision that made it clear that National Fire intended to exclude coverage

14   if EP faces liability because of its own breach of a contractual duty, the Court

15   finds the Contractual Liability Exclusion cannot be used here to prevent coverage.

16   Defendant's reliance on *APL Co. Pte. Ltd. v. Valley Forge Ins. Co.*, 541

17   Fed.Appx. 770 (9th Cir. 2013) (unpublished) does not change this Court's

18   analysis. In *APL*, the Ninth Circuit made a passing statement that an identical

19   contractual liability exclusion applied "[b]ecause the underlying judgment was

20   founded on contract liability." *APL Co. Pte. Ltd*, 541 Fed.Appx. at 772. The Court

21   then focused on whether an insured contract exception to the conclusion applied.

22   *Id.* at 772-73. Other courts have refused to rely on this decision. *See, e.g.,*

23   *Ironshore Specialty Ins. Co. v. 23andMe, Inc.*, No. 14-cv-03286-BLF, 2016 WL

24   3951660 (N.D. Cal., July 22, 2016) ("*APL*, an unpublished Ninth Circuit decision,

25   assumed without discussion or analysis that the contractual liability exclusion

26   applied to the insured's own contracts. Consequently, *APL* provides no guidance

27   as to how the California Supreme Court would interpret the exclusion."). Because

28   the *APL* decision provided no analysis on the issue and other courts have found

1   the provision ambiguous, the Court concludes that National Fire failed to meet

2   its burden of showing that "the exclusion plainly applies to the particular case

3   before the court." *Casino W.*, 329 P.3d at 616 (citing *Powell v. Liberty Mut. Fire*

4   *Ins. Co.*, 252 P.3d 668, 674 (Nev. 2011)).

5                          iii.  Excess Coverage

6        National Fire lastly argues that it had no duty to defend because it was an

7   excess insurer. National Fire asserts that the CICNA policy provided primary

8   coverage to all of the homes and National Fire's policies were excess under the

9   terms of the CICNA policy. (ECF No. 100 at 26.)

10       The Court must determine if, as National Fire contends, it can consider the

11  existence of the CICNA insurance policy to justify National Fire's decision not to

12  defend EP. The Nevada Supreme Court has stated "[t]here is no duty to defend

13  [w]here there is no *potential* for coverage. In other words, [a]n insurer ... bears a

14  duty to defend its insured whenever it ascertains facts which give rise to the

15  potential of liability under the policy." *United National Ins. Co. v. Frontier Ins. Co.,*

16  *Inc.*, 99 P.3d 1153, 1158 (Nev. 2004) (internal quotation marks omitted)

17  (emphasis in original). "[A]s a general rule, facts outside of the complaint cannot

18  justify an insurer's refusal to defend its insured." *Andrew*, 432 P.3d at 184 n.4

19  (internal citations omitted). "If neither the allegations of the complaint nor the

20  facts known to the insurer show any possibility of coverage, then there is no duty

21  to defend. In such a case, the insurance policy simply does not apply." *Nautilus*

22  *Ins. Co. v. Access Medical, LLC*, 482 P.3d 683, 688 (Nev. 2021). *Nautilus* indicates

23  that the scope of "facts known to the insurer" are limited to facts alleged in the

24  complaint and a key document known to the parties, such as the insurance policy

25  between the parties. Thus, the Nevada Supreme Court's statement in *Nautilus*

26  about "facts known to the insurer" appears to refer to evidence outside of the

27  complaint but essential to the claims in the case, not another insurer's policy

28  when the complaint never alleges other insurance existed. As a result, the Court

1   will not consider the existence of other insurance when evaluating National Fire's

2   duty to defend because as a matter of Nevada law, the insurer can only consider

3   the allegations in the complaint and its own policy.

4       This approach comports with Nevada law which holds that "[i]f there is any

5   doubt about whether the duty to defend arises, this doubt must be resolved in

6   favor of the insured." *United National*, 99 P3d. at 1158. If National Fire had wanted

7   to protect itself in case the duty to defend had not actually been triggered, then

8   it could have reserved its right to seek relief from the duty to defend while still

9   paying for the defense. *See Nautilus*, 482 P.3d at 685 ("As a practical matter,

10   those coverage disputes can rarely be resolved before it becomes necessary to

11   actively defend the third party's suit. Accordingly, an insurer often offers to pay

12   for the defense, while reserving its right to seek relief from the duty to do so.").

13       c.  Breach of Duty to Defend

14       The Court next considers whether National Fire breached the duty to

15   defend and whether such a breach was a proximate cause of EP's damages.

16   Parties do not dispute that National Fire never defended EP during the Eave

17   Soffits Lawsuit, but they disagree whether National Fire's decision not to defend

18   EP proximately caused any damages. "[E]ven in the absence of bad faith, the

19   insurer may be liable for a judgment that exceeds the policy limits if the judgment

20   is consequential to the insurer's breach." *Andrew*, 432 P.3d at 186. "An insurer

21   that refuses to tender a defense for 'its insured takes the risk...that it may end

22   up having to pay for a loss that it did not insure against.' Accordingly, the insurer

23   refuses to defend at its own peril." *Id.* (citing *Hamlin Inc. v. Hartford Acc. And

24   Indem. Co.*, 86 F.3d 93, 94 (7th Cir. 1996)). "However...an entire judgment is [not]

25   automatically a consequence of an insurer's breach of its duty to defend; rather,

26   the insured is tasked with showing that the breach caused the excess judgment."

27   *Id.* (internal citations omitted).

28   ///

15

### i.  Proximate Cause

National Fire argues that it did not breach its duty to defend because this decision was not the proximate cause for any damages suffered by EP. National Fire argues there is a causation issue because "the Bankruptcy Order precluded Pulte from enforcing the Judgment or recovering anything from Executive Plastering and limited Pulte's potential recovery to available insurance proceeds." (ECF No. 100 at 27.) Because the Court has already found that the Bankruptcy Order did not prevent EP from assigning its claims to Pulte, the Court rejects this argument.

National Fire also argues that its decision not to defend EP was not the proximate cause of any damages because EP was fully defended in the underlying action. While National Fire is right that EP's other insurers defended EP in the Eave Soffits Lawsuit, it ignores the fact that the lawsuit only proceeded because National Fire refused to settle with Pulte like EP's two other insurers, and National Fire was aware of the other settlements. (ECF No. 94-21 at 56:23-58:09, 92:17-95:19.) But for National Fire's decision not to defend and settle, Pulte would not have proceeded to trial against EP because the other insurers settled, so Pulte would not have had a case to pursue. Hence, the question the Court must consider is whether if National Fire had defended EP, would Pulte still have secured damages in the form of a judgment against EP. Since the judgment only occurred because National Fire refused to defend and ultimately settle, National Fire's decision not to defend was a proximate cause of EP's damages.

### ii.  Damages

National Fire further argues that it did not breach the duty to defend because EP never actually incurred damages since it was a bankrupt entity. The Court finds the judgment in the Eave Soffits Lawsuit constitutes damages proximately caused by National Fire's failure to defend.

Defendant's reliance on *Nalder v. United Auto. Ins. Co.*, 817 Fed.Appx. 347

(9th Cir. 2020) is unpersuasive. In that case, the judgment creditor wanted to enforce an expired default judgment, and the Ninth Circuit certified the question to the Nevada Supreme Court, which held that the insured suffered no injury because the judgment had expired. *Nalder*, 817 Fed.Appx. at 349 (citing *Nalder v. United Auto. Ins. Co.*, 449 P.3d 1268, 2019 WL 5260073, at *2 (Nev. Sept. 20, 2019)). *Nalder* is distinguishable because in that case the judgment no longer existed nor had any validity; the insured was not injured because there was simply nothing to enforce against it. In addition, the National Fire policies themselves state that "[b]ankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this coverage part." (ECF Nos. 94-1 at 41; 94-2 at 38; 94-3 at 38.)

Although the Nevada Supreme Court has not dealt with the specific question of whether the insolvency of the insured relieves the insurer of liability, a majority of jurisdictions find an unpaid judgment to be a legal injury. When a federal district court in a diversity action confronts an undecided issue of state law, it must predict how the state supreme court would decide the issue "using intermediate appellate decisions, statutes, and decisions from other jurisdictions as interpretive aids" *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). The Court finds no appellate decisions nor statutes relevant to the issue at hand, so it will follow the decisions of federal circuit courts in finding a judgment against an insolvent insured constitutes damages that the insured or a creditor can recover from the insurer. *See, e.g.*, *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 401-03 (2d Cir. 2000) (allowing creditor who was assigned insured's rights to pursue a bad faith claim for an excess judgment against the insurer to proceed despite the insured having no assets). Thus, the Court holds that the existence of a judgment against EP, even though it was bankrupt, was sufficient to constitute damages.

///

1

d. Breach of the Implied Covenant of Good Faith and Fair Dealing

2  Pulte also alleges that National Fire's refusal to defend and settle
3  constituted a breach of the implied covenant of good faith and fair dealing. Both
4  parties seek summary judgment on this claim. The Court finds that EP faced
5  damages as a result of National Fire's failure to defend and settle but genuine
6  issues of material fact exist regarding whether National Fire's failure to settle was
7  reasonable. Thus, the Court will deny both Motions for Summary Judgment as
8  to the breach of the implied covenant of good faith and fair dealing.

9

i. Damages

10  National Fire argues that it could not have breached the implied covenant
11  of good faith and fair dealing because EP suffered no damages since it was fully
12  defended in the Eave Soffits Lawsuit and Pulte could never collect the judgment
13  against EP. Based on the Court's earlier discussion of damages in the duty to
14  defend context, the Court finds that the judgment Pulte secured against EP to
15  constitute sufficient damages.

16  The Court is unpersuaded by National Fire's citation to the Fourth Circuit
17  case *Contravest, Inc. v. Mt. Hawley Ins. Co.*, 2021 WL 4782687 (4th Cir. Oct. 13,
18  2021) for the proposition that consequential damages against an entity that
19  would never have to pay the judgment merely "constitute[d] *damnum absque*
20  *injuria*, that is 'loss or damages without injury.'" *Contravest*, 2021 WL 4782687,
21  at *3 (citing *Alabama Power Co. v. Ickes*, 302 U.S. 464, 479 (1938)). *Contravest*
22  involved a dissolved entity, *id.* at *2, while EP is not dissolved. (ECF No. 95-6 at
23  2.) (identifying EP's status as "permanently revoked"). The Ninth Circuit has
24  recognized that an entity or its alter ego could be liable for a judgment that
25  survives the bankruptcy proceeding. *See N.L.R.B. v. Better Bldg. Supply Corp.*,
26  837 F.2d 377, 378 (9th Cir. 1998) (upholding decision that entity was still liable
27  for judgment against its alter ego corporations because the judgment survived
28  Chapter 7 bankruptcy proceedings); 11 U.S.C. § 727(a)(1) ("The court shall grant

the debtor a discharge, unless… the debtor is not an individual.").[2] At the time of the damages in May 2020, EP could have potentially faced responsibility for the judgment, and it constitutes damages.

### ii.  Failure to Settle

National Fire also asserts that it acted reasonably throughout the Eave Soffits lawsuit. Because the Court finds the existence of an issue of material fact as to National Fire's reasonableness, it will deny National Fire's and Pulte's Motions for Summary Judgment as to the duty to settle.

The implied covenant of good faith and fair dealing "imposes multiple duties on an insurer, including a duty to settle a claim within policy limits." *Fulbrook v. Allstate Ins. Co.*, Nos. 61567, 62199, 2015 WL 439598 (Table), at *2 (Nev. Jan. 30, 2015) (citing *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 328 (Nev. 2009)). An insurer demonstrates bad faith, and thus can be held liable, "where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct." *Id.* (quoting *Guar. Nat'l Ins. Co. v. Potter*, 912 P.2d 267, 272 (1996)); *see also Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354-55 ("Bad faith involves an actual or implied awareness of the absence of a reasonable basis for denying benefits of the policy.").

The Nevada Supreme Court has favorably cited to the California Court of Appeal's statement that, in the context of the duty to settle, "(1) "'the insurer must give the interests of the insured at least as much consideration as it gives to its own interests,' and (2) the insurer must act as 'a prudent insurer without policy limits.'" *Miller*, 212 P.3d at 326 (quoting *Archdale v. American Internat. Specialty Lines Ins. Co.*, 64 Cal.Rptr.3d 632, 644-45 (Cal. Ct. App. 2007)). Immediately afterwards, the Nevada Supreme Court cited to factors considered by the

---

[2] Under 11 U.S.C. § 727(a)(1), corporations and partnerships cannot discharge their debts in a liquidation proceeding. *N.L.R.B. v. better Bldg. Supply Corp.*, 837 F.2d 378-379 (9th Cir. 1988).

Louisiana Court of Appeals regarding whether an insurer acted in bad faith when refusing to settle:

> (1) the probability of the insured's liability; (2) the adequacy of the insurer's investigation of the claim; (3) the extent of damages recoverable in excess of policy coverage; (4) the rejection of offers in settlement after trial; (5) the extent of the insured's exposure as compared to that of the insurer; and (6) the nondisclosure of relevant factors by the insured or insurer.

*Id.* at 326-27 (citing *Fertitta v. Allstate Ins. Co.*, 439 So.2d 531, 533 (La. Ct. App. 1983)).

The Nevada Supreme Court has not clarified how to weigh the different factors, so the reasonableness of National Fire's decision not to settle is a factual issue. Here, parties dispute many relevant facts, including whether National Fire gave EP's interests as much consideration as its own and whether National Fire was reasonable at the time with regards to its belief about the extent of its coverage. This Court finds that, in light of these genuine issues of material fact, the ultimate decision regarding National Fire's reasonableness should be left for a jury to resolve.

### e.  Nevada Unfair Claims Practices Act

National Fire seeks summary judgment on Pulte's Nevada Unfair Claims Practices Act cause of action.[3] National Fire's only argument in favor of summary judgment on the claim is that EP never faced any damages as a result of any violation of the Nevada Unfair Claims Practices Act. National Fire reiterates that the judgment in the Eave Soffits Lawsuit is not sufficient evidence of damages because EP was never potentially liable for the judgment because of the bankruptcy order and EP faced no costs in connection with its defense as those costs were paid by the other insurers. The Court has already rejected these

---

[3] Pulte does not move for summary judgment on this claim in its Motion for Partial Summary Judgment (ECF No. 94).

arguments, so it will not reiterate its reasoning here. The Court will allow the Nevada Unfair Claims Practices Act cause of action to proceed because the judgment can constitute damages for this claim.

### f.   National Fire's Counterclaim/Third-Party Claim

Lastly, the Court will consider the motions associated with Defendant/Third Party Plaintiff National Fire's counterclaims/third-party claims. National Fire alleges two causes of action: 1) declaratory relief against CICNA and Pulte, specifically "a judicial determination of rights and duties under its and CICNA's policies with respect to the Eave Soffits Claims that are the subject matter of the Eave Soffits Lawsuit... [and] the validity of the judgment in the Eave Soffits Lawsuit and the Assignment of Rights by the Receiver"; and 2) contribution/reimbursement against Pulte and CICNA because they allegedly colluded and conspired to secure an excess judgment against EP. (ECF No. 9 at 36-40.) Regarding the declaratory relief, National Fire requests that this Court find that 1) the assignment of EP's rights is without effect because they were obtained under false pretenses, exceeded the state court's authority, and/or violated the Bankruptcy Court's Order granting relief from the automatic stay; 2) the CICNA policies are primary and noncontributory and the National Fire policies were excess and/or did not apply to the claims in the Eave Soffits Lawsuit so any recovery Pulte seeks are owed by CICNA or unrecoverable; and 3) some or all of the $267,685.21 National Fire paid to Pulte should be reimbursed to National Fire by CICNA. (*Id.* at 38-39.)

Third Party Defendant CICNA's Motion for Partial Summary Judgment (ECF No. 97) asks this Court to grant summary judgment with regards to National Fire's allegations of fraud, collusion, and conspiracy. National Fire filed a Motion for Partial Summary Judgment against CICNA (ECF No. 102) requesting that the Court find that  the CICNA policies provided coverage for all of the homes at issue in the Eave Soffits Lawsuit and that CICNA was the primary insurer while

National Fire, if its policies applied, was only an excess and non-contributing insurer.

i. Fraud and Collusion Allegation

The Court denies summary judgment for CICNA as to whether Pulte and CICNA colluded and conspired to gain the judgment against EP and the assignment of its rights against National Fire. There exist multiple genuine issues of material fact precluding summary judgment.

"The Supreme Court of Nevada has not addressed what constitutes fraud or collusion in this context. But other courts have indicated that fraud and collusion occur when the purpose is to injure the interests of an absent or nonparticipating party, such as an insurer or nonsettling defendant." *Andrew v. Century Sur. Co.*, 134 F.Supp.3d 1249, 1267-68 (D. Nev. 2015). This is generally "a fact-intensive inquiry determined on a case-by-case basis." *Id.* at 1268 (citing *Andrade v. Jennings*, 62 Cal.Rptr.2d 787, 798 (Cal. Ct. App. 1997)).

Here, National Fire has shown that multiple genuine issues of material fact exist that preclude the Court from granting summary judgment. For instance, National Fire has demonstrated a genuine issue with regards to whether National Fire and CICNA operated at arms-length. Both CICNA and Pulte are owned and operated by PulteGroup (ECF No. 115-2 at 3-4.) Beyond their shared ownership, National Fire cites to additional evidence in support of its claim that CICNA and Pulte did not operate at arms-length and that they intended to inflate the judgment to collect as much as possible from National Fire. This includes CICNA's coverage counsel recommending that they "immunize the judgment against attack" by not stipulating to the $13 million damages calculation used prior in the action, but instead allowing the question of damages to be decided at a bench trial. (ECF No. 115-32 at 4.) National Fire's 30(b)(6) witness, Richard Dunn, provided further testimony in support of National Fire's claim, including evidence that CICNA paid more than the claim was worth to increase Pulte's potential

recovery against National Fire. (ECF No. 115-39 at 133:13-134:22, 136:06-137:07.) Thus, the Court denies summary judgment so a jury can resolve these genuine issues of material fact.

### ii.  Primary and Excess Insurance

The Court will also deny National Fire's motion for a determination that CICNA's insurance was primary and National Fire's insurance, if it applied, was excess and non-contributory for all of the homes because genuine issues of material fact exist.

The parties dispute if CICNA's policies applied to homes sold prior to the policies going into effect. National Fire argues that, because the CICNA policies did not include any "prior work" or "prior damages" exclusion, the CICNA policies provided coverage for continuous and progressive property damage for homes built prior to the inception of the policy. (ECF No. 102 at 16.) CICNA responds that its insurance policy did not provide primary coverage for homes built and closed prior to the 2004-2005 policy which began April 1, 2004. (ECF No. 118 at 8.) The Commercial General Liability Coverage Form in CICNA's policy states that "[t]his insurance policy applies to 'bodily injury' and 'property damage' only if [t]he 'bodily injury' or 'property damage' occurs during the policy period[.]" (ECF No. 94-1 at 32.) CICNA's FRCP 30(b)(6) witness testified that they had not investigated when the damage to homes that closed escrow prior to CICNA's policy occurred because they did not believe the CICNA policy covered these homes. (ECF No. 102-18 at 241:14-21). While National Fire cites this as evidence that the damage to these homes did not occur until CICNA's policy started, this provides equal support for the idea that all of the damage to these homes occurred prior to that time. Since the issue of whether any damage occurred after the CICNA's policy went into effect could impact the liability of each insurer, summary judgment is inappropriate.

///

1

## IV.    CONCLUSION

It is therefore ordered that Plaintiff's Motion for Partial Summary Judgment (ECF No. 94) is granted in part and denied in part. The Court finds that, as a matter of law, National Fire had a duty to defend EP, it breached this duty, this breach was a proximate cause of the judgment in the Eave Soffits Lawsuit, and EP was damaged by the Judgment. The Court denies the Motion for Partial Summary Judgment as to whether National Fire breached its duty to settle.

It is further ordered that Defendant's Motion for Summary Judgment (ECF No. 100) is denied.

It is further ordered that Third Party Defendant CICNA's Partial Motion for Summary Judgment (ECF No. 97) is denied.

It is further ordered that Defendant/Third Party Plaintiff's Motion for Partial Summary Judgment (ECF No. 102) is denied.

It is further ordered that the Motions to Seal (ECF Nos. 104, 116) are granted.

DATED THIS 22nd day of March 2024.


_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE