UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PN II, INC. dba PULTE HOMES and/or DEL WEBB,<br><br>Plaintiff,<br>v.<br><br>NATIONAL FIRE & MARINE INSURANCE COMPANY; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:20-cv-01383-ART-BNW<br><br>ORDER ON MOTIONS IN LIMINE (ECF No. 216 and 219) |
| NATIONAL FIRE & MARINE INSURANCE COMPANY,<br><br>Counter-Claimant,<br>v.<br><br>PN II, INC. dba PULTE HOMES and/or DEL WEBB,<br><br>Counter-Defendant. | |
| NATIONAL FIRE & MARINE INSURANCE COMPANY,<br><br>Third-Party Plaintiff | |

Before the Court are motions in limine filed by Third-Party Plaintiff/Defendant National Fire & Marine Insurance Company ("National Fire"), (ECF No. 216) and Plaintiff PN II, Inc. dba Pulte Homes and/or Del Webb ("Pulte"), (ECF No. 219), and the parties' Joint Pretrial Order (JPTO) (ECF No. 217). For the following reasons, the Court grants the motion in limine filed by National Fire, denies the motion filed by Pulte, and grants the JPTO.

## I. Factual and Procedural Background

Because the parties are familiar with the factual circumstances of this case,

the Court will thus not recite them here in full. As National Fire aptly states, "[t]his lawsuit is, in essence, a case about a case." (ECF No. 222 at 8.) Actually, it touches on three cases: a bankruptcy case, a state court case, and now this case.

The bankruptcy case was filed by Executive Plastering (EP), which is not a party here. (ECF No. 131 at 2.) Pulte subcontracted with EP to install eave soffits on Pulte homes and then make repairs on some 2,033 homes, at a cost of over $18 million. (*Id.*) Multiple insurers provided liability insurance to EP, including National Fire and CICNA. (*Id.*) After EP filed for bankruptcy, Pulte moved the bankruptcy court to lift the automatic bankruptcy stay "for the limited purpose of liquidating its claims against [EP] and pursuing recovery of any available insurance proceeds from the Debtor's liability insurers [.]" (*Id.* at 2-3.) The bankruptcy court lifted the stay on June 1, 2015 (the "Bankruptcy Order"). (*Id.*)

Next Pulte filed a state court action, the "Eaves Soffits Lawsuit," against EP to recover the costs of the repairs, alleging various indemnity and breach of contract claims. (*Id.* at 3.) Pulte informed insurers, including National Fire, of the lawsuit and offered to settle for their remaining policy limits. (*Id.*) EP's other insurers defended it in the Eave Soffits Lawsuit and eventually reached an agreement with Pulte. (*Id.* at 3.) Pulte again extended offers to settle to each of the insurers, which National Fire refused. (*Id.*) The other two insurers settled and entered an agreement with the court that judgment would be entered against EP and EP would assign its rights against National Fire to Pulte. (*Id.*) After a bench trial in December 2019, the state court entered judgment in favor of Pulte for $13,000,000, in addition to costs and interest. (*Id.* at 5.) National Fire then made a $267,685.21 payment in partial satisfaction of the judgment. (*Id.*)

Pulte then filed this action, standing in the shoes of insured EP, against National Fire, alleging four claims: (1) Breach of Contract – Duty to Defend, (2) Breach of Contract – Duty to Indemnify, (3) Tortious Breach of the Duty of Good

Faith and Fair Dealing, and (4), Violation of Nevada's Unfair Claims Settlement Practices Act. (ECF No. 1.) National Fire counterclaimed for declaratory relief against CICNA, arguing its policies were primary, and seeking contribution or reimbursement for any amount the court finds that it owes Pulte. (ECF No. 9.) National Fire asserts that Pulte and CICNA colluded to inflate the damages in order to increase its potential award against National Fire. (*Id.*)

On cross motions for summary judgment, the Court held: 1) National Fire lacked standing to challenge the assignment of rights to Pulte and, even assuming standing, the assignment was valid (ECF No. 131 at 7); 2) National Fire had a duty to defend EP, it breached this duty, this breach was the proximate cause of the judgment in the Eave Soffits Lawsuit, and EP was damaged by the judgment (*id.* at 10-17); 3) that it was for the jury to decide whether National Fire acted reasonably or in bad faith in refusing to settle (*id.* at 19); 4) Pulte's claim under the Nevada Unfair Claims Practices Act would proceed (*id.* at 20); 5) it was for the jury to decide whether Pulte and CICNA colluded in inflating the amount of damages in the state court judgment (*id.* at 22); and 6) it was for the jury to decide whether CICNA's insurance was primary and National Fire's was excess and non-contributory (*id.* at 23).

## II. Legal Standard

In general, "[t]he court must decide any preliminary question about whether … evidence is admissible." Fed. R. Evid. 104. In order to satisfy the burden of proof for Federal Rule of Evidence 104(a), a party must show that the requirements for admissibility are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("We have traditionally required that these matters [regarding admissibility determinations that hinge on preliminary factual questions] be established by a preponderance of proof.").

"Although the [FRE] do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to

manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984) (citing FRE 103(c)). Trial courts have broad discretion when ruling on such motions. *See Sweeney v. Chang*, 2019 WL 1431583, at *2 (C.D. Cal. Mar. 26, 2019) (citing *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002)). To exclude evidence on a motion in limine, the evidence must be inadmissible "on all potential grounds." *See, e.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

Regardless of the court's initial decision on a motion in limine, any issues can be revised during trial. *See* Fed. R. Evid. 103 advisory committee's note to 2000 amendment ("Even where the court's ruling is definitive, nothing in the amendment prohibits the court from revisiting its decision when the evidence is to be offered."); *Luce*, 469 U.S. at 41-42. ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). "The Supreme Court has recognized that a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce*, 469 U.S. at 41-42).

## III. Analysis

National Fire's motion in limine seeks to exclude from trial evidence or reference to this Court's order on summary judgment. (ECF No. 131.) Pulte's motion in limine seeks to exclude from trial evidence or reference to the Bankruptcy Court Order and Pulte's underlying motion to lift the bankruptcy stay, *In re Executive Plastering, Inc.*, Case No. 09-33776-btb ("Bankruptcy Court Briefing and Order," ECF 114-7). The Court addresses each in turn.

### A. National Fire's Motion in Limine to Exclude From Evidence or Reference the Summary Judgment Order (ECF No. 216)

National Fire's motion in limine seeks to prohibit the parties from admitting or referring at trial to this Court's order on the parties' cross-motions for

summary judgment. (ECF No. 131) National Fire argues that the order is not evidence, referring to it would risk unfair prejudice and jury confusion, and relevant information about it could be addressed through jury instructions. (ECF No. 216.) Though Pulte appears to agree that the order is not evidence, it nonetheless seeks to refer to the order at trial for two purposes: (1) to "guidepost the jury on what is and is not at issue," and (2) as evidence of National Fire's continued bad faith. (ECF No. 221).

Relevant evidence is admissible if it is not barred by a specific evidentiary rule and if it is not unduly prejudicial relative to its probative value, and irrelevant evidence is not admissible. Fed. R. Evid. 401; Fed R. Evid. 402. A court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

"Generally, a court's findings on a motion for summary judgment can be excluded if they present a risk of jury confusion and unfair prejudice." *Spin Master, Ltd., v. Zobmondo Entertainment, LLC*, 2012 WL 8134012, at *14 (C.D. Cal, Apr. 27, 2012). Courts have extended this logic to all of a court's prior rulings and orders, other than claim construction, for the same reasons. *Vaporstream, Inc. v. Snap Inc.*, 2020 WL 978731, at *10 (C.D. Cal. Feb. 28, 2020) (citing *Hewlett-Packard Co. v. Mustek Sys., Inc.*, No. 99-CV-351-RHW, 2001 WL 36166855, at *4 (S.D. Cal. June 11, 2001); *Wilson v. Hartford Ins. Co. of the Midwest*, No. C10-993RAJ, 2011 WL 2670199, at *4 (W.D. Wash. July 7, 2011); *US Foam, Inc. v. On Site Gas Sys., Inc.*, 735 F. Supp. 2d 535, 560 (E.D. Tex. 2010)).

Here, too, the order is neither evidence nor necessary to frame the issues for the jury. The joint pretrial order frames the legal and factual issues, providing a roadmap for the trial. *See* LR 16-3(b). The jury will be instructed on the applicable law, including issues resolved at the summary judgment stage. This is

sufficient to eliminate jury confusion about what issues are deemed established and which are for the jury to decide. *See Spin Master*, 2012 WL 8134012 at *15 (ruling on a motion in limine that excluding a summary judgment order but providing limiting instructions on its holding struck the proper balance of competing interests between the parties).

Pulte also seeks to rely on the order as evidence of "National Fire's continued bad faith." (ECF No. 221 at 6.) In the summary judgment order, the Court determined that National Fire had a duty to defend EP, breached that duty, and the breach of that duty was a proximate cause EP's damages. (ECF No. 131 at 8, 10.) The order left for the jury to decide the reasonableness of National Fire's decision not to settle, i.e., whether National Fire's refusal to settle the Eave Soffits Lawsuit was in bad faith in breach the covenant of good faith and fair dealing. (ECF No. 131 at 18, 20.) Pulte argues that the order is evidence of "National Fire's Continued Bad Faith" in refusing to defend EP or settle the Eaves Soffits Lawsuit, that "National Fire should have satisfied the Judgment against EP," and probative of National's Fire's state of mind, i.e., continued bad faith, in failing to do so since the order. (ECF No. 221 at 6-8.) National Fire responds that Pulte cannot rely on the order as evidence of bad faith or raise at this stage what it describes as a new, unpled, theory of bad faith. (ECF No. 223.)

The Court agrees with National Fire that the order is not evidence of bad faith. To the contrary, the order explicitly holds that whether National Fire acted reasonably or in bad faith is a factual question for the jury to decide. (ECF No. 131 at 10.)

Accordingly, the Court grants National Fire's motion in limine to exclude the order at trial. The Court will consider the parties' proposed jury instructions related to the effect of its summary judgment order.

//

//

**B. Pulte's Motion in Limine to Exclude from Evidence or Reference the Bankruptcy Court Order and Briefing (ECF No. 219)**

Pulte's motion seeks to exclude from evidence the Bankruptcy Order and its related briefing on the grounds that it is irrelevant and poses a risk of undue prejudice, confusion, and delay. (ECF No. 219.) Citing the law of the case doctrine, Pulte claims that every issue regarding the Bankruptcy Order has already been decided and that this Court has found that it no longer has legal effect. (ECF No. 219 at 8-9.) National Fire argues that the Bankruptcy Order and its related briefing are relevant to its collusion defense, whether it acted reasonably in refusing to settle the EP litigation, and damages. (ECF No. 222.)

Pulte argues that Bankruptcy Order should be excluded because the Court has already held that it had no legal effect after June 28, 2016, and that National Fire is attempting to relitigate its arguments that the Bankruptcy Order precluded Pulte from recovering its judgment against EP and that Pulte is judicially estopped from enforcing its judgment against EP. (ECF No. 219 at 9.) The Court held that National Fire lacked standing to challenge the assignment of rights to Pulte and, even assuming standing, the assignment of EP's right to Pulte was valid and the existence of a judgment against EP constituted damages. (ECF No. 131 at 7, 17, 20). The Court also held that fact issues precluded it from determining damages, finding that it was for the jury to decide whether National Fire acted reasonably (or in bad faith) in refusing to settle (*id.* at 19), whether Pulte and CICNA colluded in setting the amount of damages in the state court judgment (*id.* at 22), and whether CICNA's insurance was primary and National Fire's was excess and non-contributory (*id.* at 23).

The Court does not construe National Fire's briefing as seeking to relitigate the holdings regarding Pulte's right to enforce its judgment against EP. Rather, National Fire argues that the Bankruptcy Order is relevant to resolve remaining factual issues.

**1. Relevance**

National Fire argues that the Bankruptcy Order and its related briefing is relevant to 1) its collusion defense, 2) the dispute of whether it failed to settle in bad faith, and 3) the assessment of damages. (ECF No. 222.) Pulte argues that the Bankruptcy Order is not necessary evidence to prove collusion, disputes National Fire's reliance on the Bankruptcy Order in deciding not to settle, and argues that the Order is irrelevant to damages. (ECF No. 224.)

**a. Collusion Defense**

National Fire seeks to utilize the Bankruptcy Order to prove its collusion defense. (ECF No. 222 at 14.) According to National Fire, Mr. Thomas, Pulte's former trial counsel, set into motion a series of decisions that would force National Fire to bear the brunt of a liability settlement beyond its coverage limits. (*Id.*) National Fire argues that the Bankruptcy Order and its related briefing are part of the "history of collusive scheme hatched by Pulte and CICNA," stating that Pulte's motion to lift the bankruptcy stay was the critical first step to securing the $13 million state court judgment. (*Id.* at 14.) Pulte argues, among other reasons, that the Bankruptcy Order has no legal effect and does not evidence collusion. (ECF No. 224 at 4-5.) The Court construes National Fire's briefing as arguing that the Bankruptcy Order and its related briefing are not proof of collusion, per se, but necessary historical facts for its collusion defense.

The Court finds that the Bankruptcy Order and its related briefing are relevant to National Fire's collusion defense and thus will not be excluded for this purpose.

**b. Duty to Settle**

National Fire argues that the Bankruptcy Order and its related briefing provide evidence that it did not refuse to settle in bad faith because it relied upon the Bankruptcy Order language limiting recovery "to the monetary coverage imposed by the applicable insurance policies." Pulte disputes National Fire's

reliance on the Bankruptcy Order, arguing that order first appears in National Fire's claim notes in November 2019, after its first refusal to settle in August 2017 and second refusal to settle in October 2019, suggesting that the order was not a part of National Fire's assessment of liability at the time it made those decisions. (ECF No. 224 at 8; ECF No. 131 at 4.)

The Bankruptcy Order permitted Pulte to sue EP and capped its recovery to applicable insurance policies. When Pulte moved to lift the bankruptcy stay, it stated it "ha[d] no intention of seeking recovery against [Executive Plastering] or the bankruptcy estate" and would seek only "recovery of any available insurance proceeds from [Executive Plastering's] liability insurers." *In re Executive Plastering, Inc.*, No. 09-33776-btb (June 1, 2015), Dkt. 616 at 1; *accord id.* at 5. The Bankruptcy Order incorporates that request, allowing Pulte to "proceed with prosecution of their claims against debtor EXECUTIVE PLASTERING, INC. ('Debtor') for the limited purpose of liquidating its claims against the Debtor and pursuing the recovery of any available insurance proceeds from the Debtor's liability insurers." *In re Executive Plastering, Inc.*, No. 09-33776-btb (June 1, 2015), Dkt. 616 at 2. The order further specifies that Pulte's recovery is limited to applicable insurance policies:

> c. Movant's recovery, by way of settlement or judgment, shall be limited to the monetary coverage imposed by the applicable insurance policies. . . .

*Id.*

National Fire states that the Bankruptcy Order will be relevant to two of the *Miller* factors that are considered in determining whether an insurer acted in bad faith: the extent of damages recoverable in excess of policy coverage and the extent of the insured's exposure as compared to that of the insurer. *See Allstate Ins. Co. v. Miller*, 212 P.3d 318, 326-27 (Nev. 2009). When determining whether an insurer acted in bad faith, courts weigh "(1) the probability of the insured's

liability; (2) the adequacy of the insurer's investigation of the claim; (3) the extent of damages recoverable in excess of policy coverage; (4) the rejection of offers in settlement after trial; (5) the extent of the insured's exposure as compared to that of the insurer; and (6) the nondisclosure of relevant factors by the insured or insurer." *Miller*, 212 P.3d at 26-27. National Fire asserts that Rick Dunn, National Fire's corporate designee on Rule 30(b)(6) testified in his deposition that he did not believe that EP was exposed to an excess judgment because of the language of the Bankruptcy Order. (ECF No. 222 at 18.) Similarly, Tom Mortland, a supervisor assigned to the claim, stated that he understood "the order limit[ed] the exposure of Executive Plastering to its available insurance proceeds." (*Id.*) National Fire argues that these depositions, with the support of the text of the Bankruptcy Order, could allow a jury to find that it acted reasonably (not in bad faith) based on its belief that it was not exposed to or liable for damages beyond its policy limits.

Pulte counters that National Fire should have known that it had to consider the $18 million in excess exposure from its policy limits under a Louisiana Court of Appeal case that the Nevada Supreme Court favorably cited in *Miller*. *See Fertitta v. Allstate Ins. Co.*, 439 So. 2d 531, 533 (La. Ct. App. 1983). Pulte reiterates its argument that the Bankruptcy Order had no legal effect by that time, and that National Fire's legal theory has been concocted after the fact to protect it from the judgment.

The Court finds that National Fire has presented a sufficient argument that the Bankruptcy Court Briefing and Order are relevant to whether it acted in good faith when it refused to settle with Pulte. Therefore, the Court will not exclude the Bankruptcy Order and its related briefing on these grounds.

**c. Assessment of Damages**

National Fire argues that the Bankruptcy Order is also relevant to the jury's assessment of damages, under three theories: 1) that Pulte and CICNA colluded

to artificially inflate the judgment; 2) that National Fire did not breach its duty to settle, and 3) that the Bankruptcy Order demonstrates that National Fire is liable only for the amount of coverage under its policies. (ECF No. 222 at 21.) Pulte argues that the Bankruptcy Order did not cap the available damages to insurance proceeds, and that the Court has already determined that the judgment in the Eave Soffits Lawsuit constitutes damages. (ECF No. 224 at 13.)

The Court's summary judgment order did not, as Pulte claims, determine the amount of damages. The Court held that Eave Soffits Lawsuit did constitute damages for the sake of Pulte's claim against National Fire for breaching its duty to defend, that Pulte had a right to enforce the judgment, and National Fire's duty to defend was "a proximate cause" of EP's damages. (ECF No. 131 at 16.) As stated, however, the Court identified numerous factual disputes regarding National Fire's liability for damages, if any.

National Fire claims that the damages were mitigated by the Bankruptcy Order, which stated that recovery would be limited to available insurance proceeds. National Fire argues that the Court's holding that National Fire breached its duty to defend does not make it liable for the entire judgment because "the insured is tasked with showing that the breach caused the excess judgment." *See Century Sur. Co. v. Andrew*, 432 P.3d 180, 185-86 (Nev. 2018) (citing *Khan v. Landmark Am. Ins. Co.*, 326 Ga.App. 539, 757 S.E.2d 151, 155 (2014) ("[W]hether the full amount of the judgment was recoverable was a jury question that depended upon what damages were found to flow from the breach of the contractual duty to defend."))

The Court does not resolve here as a legal matter whether the Bankruptcy Order caps Pulte's damages. Rather, the Court is merely allowing National Fire to present evidence supporting its claim that it acted reasonably, in part based on the Bankruptcy Order, in deciding not to settle the Eaves Soffits Lawsuit.

//

**2. Prejudice**

Pulte also argues that admission of the Bankruptcy Order would be prejudicial to the jury for the same reason as the order on summary judgment: because prior court orders are generally excluded to prevent prejudice. *See Spin Master, Ltd., v. Zobmondo Entertainment, LLC*, 2012 WL 8134012, at *14 (C.D. Cal, Apr. 27, 2012). The Bankruptcy Order and its related briefing, however, are from a separate case. Courts have consistently held that courts may take judicial notice of documents filed in other court proceedings. *See Schulze v. FBI,* 2010 WL 2902518, at *1 (E.D.Cal. July 22, 2010) (quoting *United States v. Black,* 482 F.3d 1035, 1041 (9th Cir. 2007) ("A federal court may 'take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'"). The Court finds that, with proper jury instructions, admission of the Bankruptcy Order and its related briefing will not cause unfair prejudice, confusion or delay.

Therefore, the Court will deny Pulte's Motion in Limine and allow the Bankruptcy Order and its related briefing to be used as historical facts in support of National Fire's collusion defense and evidence in support of its argument that it acted reasonably in its refusal to settle, including its reasonable belief about its assessment of damages.

## IV. Conclusion

It is therefore ordered that National Fire and Marine Insurance Company's Motion in Limine to Exclude References by Parties to the Court's Summary Judgment Order (ECF No. 216) is GRANTED.

It is further ordered that PN II, Inc.'s Motion in Limine to Exclude From Evidence Court Order Lifting Bankruptcy Stay and Associated Briefing (ECF No. 219) is DENIED.

It is further ordered that the parties must meet and confer to propose jury instructions consistent with this order. The deadline for proposed jury instruction will be set by separate order.

It is further ordered that the parties' Joint Pretrial Order (ECF No. 217) is GRANTED. A trial date will be set by separate order.

Dated this 30th day of September, 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE